**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR-07-111-PCT-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Gerald James Brown, ) | |
| Defendant. ) | |

Defendant Gerald Brown has filed a motion to suppress evidence. Dkt. #29. The Government has responded. Dkt. #37. An evidentiary hearing was held on February 26, 2008. Dkt. #39. As explained more fully below, the Court will grant the motion in part and deny it in part.

**I.      Background.**

The Yavapai County Sheriff's Office investigated a potential illegal drug operation occurring at Defendant's residence located at 1414 Wagon Wheel Road, Prescott, Arizona. On October 18, 2004, Officer James Tobin obtained a warrant to search Defendant's residence for evidence of ownership of the residence, illegal drugs, drug paraphernalia, and electronic equipment. The warrant described Defendant's residence as consisting of a dark green main house, a brown guest house directly south of the main house, a small brown shed to the east of the guest house, and an underground shooting range between the guest house and the shed. *Id.* Because Officer Tobin's affidavit provided evidence of a potentially violent response to the search, the warrant allowed for a "no knock" entry. Dkt. #37-2 at 14-24.

Officers executed the warrant on October 19, 2004. The search of Defendant's house disclosed methamphetamine, marijuana, and drug paraphernalia. Firearms were also found behind a false closet wall, under a bed, and under a work bench, and a silencer was found in a pinball machine. The search of Defendant's shooting range revealed guns in a vault under the floor.

In addition to the structures named in the search warrant, officers discovered a series of dirt roads and trails that led through trees and hills to neighboring structures. Even though these neighboring structures were not identified in the search warrant and later were shown to be located on separate parcels of property, the officers searched them. These structures included an Airstream trailer, a large garage, a camper shell, and a green bus. Firearms and explosives were found.

Defendant stands indicted on federal drug and weapons charges. Dkt. #1. The indictment includes weapons and explosives found in Defendant's house and shooting range and in the neighboring structures.[1]

**II.   Discussion.**

Defendant seeks to suppress all evidence seized during the search. Dkt. #29. Defendant's motion contends that the Fourth Amendment requires suppression of the weapons because they were not particularly described in the warrant as objects to be seized. *Id.* at 4-7. The motion further contends that Officer Tobin's affidavit in support of the warrant failed to establish probable cause, that the information contained in the affidavit was stale, and that an informant's tip described in the affidavit was not reliable. *Id.* at 8-14. The motion requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to demonstrate the falsity of Officer Tobin's statement that a "no knock" entry was necessary because attempts to search Defendant's residence would be met with violence. *Id.* at 15-17.

For reasons stated on the record, the Court ruled at the February 26, 2008 hearing that

---

[1] A second search warrant was obtained by Officer Victor Dartt on October 20, 2004. Dkt. #37-2 at 1-13. The items found during the execution of that warrant are not at issue in this case.

- 2 -

the warrant was supported by probable cause, that the information contained in Officer Tobin's affidavit was not stale, and that the "no knock" entry was lawful. Defendant conceded at the hearing that he had not made a showing sufficient to obtain a *Franks* hearing, and the Government asserted the "inevitable discovery" doctrine with respect to evidence found at locations not described in the search warrant. The Court must now decide whether the seizure of weapons from Defendant's residence and shooting range was lawful under the plain view doctrine, and whether the seizure of evidence from the Airstream trailer, the large garage, the camper shell, and the green bus was lawful under the inevitable discovery doctrine.

### A.   Plain View.

For the plain view doctrine to apply, "'two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent.'" *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted); *see Horton v. California*, 496 U.S. 128, 135-37 (1993). The first requirement is met in this case because the officers searched Defendant's residence and shooting range pursuant to a valid search warrant and, as Defendant conceded at the hearing, found weapons in places where they were authorized to look for drugs.

The second requirement of the plain view doctrine – that the incriminating nature of the evidence be immediately apparent – focuses on "whether the officers had 'probable cause to believe [the evidence was] associated with criminal activity." *Stafford*, 416 F.3d at 1076 (quoting *Horton*, 496 U.S. at 131 n.1). "This standard does not require the officers to *know* that the item seized is illegal." *Id.* (emphasis in original). Rather, the officers need only have a reasonable belief that the item may be incriminating. *See Texas v. Brown*, 460 U.S. 730, 741-42 (1983).

Many circuits, including this one, have recognized "the close relationship between drugs and firearms in the narcotics trade[.]" *United States v. Simpson*, 10 F.3d 645, 647 (9th Cir. 1993), *vacated on other grounds by* 513 U.S. 983 (1994); *see United States v. Gamble*, 388 F.3d 74, 77 (2d Cir. 2004) ("ammunition is a recognized tool of the drug-dealing trade");

*United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir. 1994) ("weapons are 'tools of the trade' of drug dealers"); *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990) (firearms are "tools of the trade" of drug dealers); *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir. 1991) ("[I]t has become common knowledge that drug operators frequently acquire weapons for use in connection with drug activities."); *United States v. Caggiano*, 899 F.2d 99, 103 (1st Cir. 1990) ("It is now recognized by us and other circuits that firearms are one of the tools of the trade of drug dealers."), *abrogated on other grounds by Horton*, 496 U.S. at 152.

In this case, Defendant was under investigation for running an illegal drug operation. Prior to executing the search warrant, the officers had specific information that Defendant had sold methamphetamine to others and was in possession of the drug. Because of the "close relationship" between the illegal drug trade and weapons, it was reasonable for the officers immediately to infer that the weapons found at Defendant's residence were "incriminating evidence of a narcotics offense." *Simpson*, 10 F.3d at 647. "Any reasonably competent police officer who discovered firearms while searching for drugs would be immediately aware of their evidentiary significance." *Caggiano*, 899 F.2d at 104; *see Cooper*, 19 F.3d at 1163 ("[T]he simultaneous possession of weapons and drugs supports an inference that the suspect is dealing drugs."); *United States v. Reed*, 726 F.2d 339, 344 (7th Cir. 1984) ("Seizure of the guns did not exceed the scope of a valid search, as police reasonably could believe that the guns were involved in cocaine dealing or other illegal activity evidenced by the items discovered during the search."). The Court accordingly concludes that the "immediately apparent" requirement is satisfied and that the plain view doctrine justified the officers' seizure of weapons in Defendant's house, shooting range, and other structures expressly identified in the search warrant.[2]

### B. Inevitable Discovery.

The Government conceded at the hearing that searches of the Airstream trailer, the

---

[2] Given this ruling, the Court need not address the Government's argument that the "immediately apparent" requirement is met based on a violation of A.R.S. § 13-3102(a)(8).

- 4 -

1 large garage, the camper shell, and the green bus were made without a warrant. In response 2 to the Court's inquiry whether there was any reason not to suppress evidence seized from 3 these locations, counsel for the Government asserted the "inevitable discovery" doctrine.

4 The inevitable discovery doctrine is an exception to the exclusionary rule. *United* 5 *States v. Polanco*, 93 F.3d 555, 561 (9th Cir. 1996). The doctrine "allows the introduction 6 of illegally obtained evidence if the government can show by a preponderance of the 7 evidence that the tainted evidence would inevitably have been discovered through lawful 8 means." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (citing *Nix* 9 *v. Williams*, 467 U.S. 431, 444 (1984)). "The government can meet its burden by 10 establishing that, by following routine procedures, the police would inevitably have 11 uncovered the evidence." *Id.* at 1399.

12 The Government has made no such showing in this case. The Government proffered 13 no facts showing that an independent search was underway, *see Nix*, 467 U.S. at 449-50, or 14 that the search would have occurred as a matter of routine procedure, *see United States v.* 15 *Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (inventory search was an inevitable step in the 16 routine booking procedure), *and United States v. Martinez-Gallegos*, 807 F.2d 868, 870 17 (9th Cir. 1987) (review of immigration files was the only available procedural step). The 18 Government's mere assertion that the unlawfully seized evidence would inevitably have 19 been discovered is not sufficient to render the evidence admissible at trial. *See Nix*, 467 20 U.S. at 444 n.5 (noting that "inevitable discovery involves no speculative elements but 21 focuses on demonstrated historical facts capable of ready verification or impeachment"). 22 Indeed, even if the Court were to assume that the officers "were in possession of competent 23 evidence showing probable cause at the time of the search, the inevitable discovery doctrine 24 would not justify introduction of the evidence seized without a warrant." *United States v.* 25 *Mejia*, 69 F.3d 309, 320 (9th Cir. 1995); *see United States v. Reilly*, 224 F.3d 986, 995 (9th 26 Cir. 2000) ("[T]he district court committed clear error in applying the inevitable discovery 27 doctrine based on the agents' actual but unexercised opportunity to secure a search 28 warrant."); *United States v. Boatwright*, 822 F.2d 862, 865 (9th Cir. 1987) (guns unlawfully

1  seized from a converted garage behind the suspect's main residence were not admissible
2  merely because the officers could have obtained a warrant to search the garage).

### III. Conclusion.

The Court will deny the motion to suppress with respect to weapons found in Defendant's house, shooting range, and other structures expressly identified in the search warrant. The Court will grant the motion with respect to evidence seized from the Airstream trailer, the large garage, the camper shell, and the green bus.

**IT IS ORDERED** that Defendant's motion to suppress evidence (Dkt. #29) is **granted in part and denied in part** as set forth in this order.

DATED this 7th day of March, 2008.

*David G. Campbell*
David G. Campbell
United States District Judge